Thank you, Counsel. Thank you. Good morning, Your Honors. My name is Eric Slepian. I'm appearing on behalf of Appellant Walsh. I'm hoping to reserve four minutes for rebuttal. Counsel, please be reminded that the time shown is your total time remaining. I see it. Not easy to see while we're talking, but I will do my best. All right. Your Honors, my client seeks relief for multiple reasons, but one of which is the fact that the ALJ issued a decision that does not reconcile findings of fact and conclusions of law that became final. Specifically, there was a decision that found my client disabled as of February 24, 2015. The question is, do those restrictions from that decision relate back three and a half weeks? Well, but if you look at that decision, I mean the evidence that the ALJ relied on there consists of events that happened in March of 2015, an examination in 2017, an examination in 2018, and then another written evaluation done in February of 2018, and then behavioral observations from March 2015. So all of this that's in here is post-February 24th. So I don't see how there's an immediate inconsistency between saying that she was disabled as of February 24th, 2015. I mean, if this decision had reached back and said, you know, this has been going on for years and I find it, that would be a direct inconsistency. But everything is all post the date, so I don't see how there's the inconsistency you're claiming. So that's an excellent question, Your Honor. And I would start by telling you that in the case of Smith v. Bowen, there's a requirement that a relate-back analysis be performed when there's evidence of restrictions and limitations that post-date the DLI. In addition to that, Your Honor, and very importantly in this case, is there significant evidence of those same exact limitations reaching back? So let me focus on the off-task provision and the absentee rate that was found in existence as of February 25th of 2015. Dr. Hawks rendered an opinion in 2013 at page 435 of the record, indicating that Ms. Walsh had anxiety with heart palpitations, chest pains, fear of dying, impaired concentration, and interrupted sleep. Dr. Hawks basically said that Ms. Walsh would be off-task more than 11% of the workday. And that was written in 2013 at page 435. In addition to the record supporting it, we have more opinions of restrictions of being off-task. There are two more. One in 2013, which was from Dr. Fierro at page 515. And the other is in 2014 from Dr. Motch at page 578. ALJ specifically discussed both of those. So why are the ALJ's reasons for not finding those to be persuasive not supported by substantial evidence? So first, let's talk about Dr. Hawks. You had indicated that the ALJ found reasons to disregard the opinion. So let's go to that page of the judge's decision and see what she wrote. At 686, she writes she assigns little weight to the opinion of Dr. Hawks because there was improvement with medication. She cites 4F. 4F is 50 page long and it covers two and a half year periods of treatment. I have no idea what record the judge was looking at when she said there was improvement. But let's talk about improvement itself. Ms. Walsh was found disabled as of February of 2015. The report's listed in 2014. If she improved after 2014 to 2015, that improvement wasn't enough to get her back to work. We know that because the commissioner found as of February 2015 she needed to be off task, she would have an absentee rate, and she was disabled. And so just saying 4F is insufficient. I want to talk additionally about the reviewer opinions that the judge looked at. These are state agency opinions. So there are two of them, Dr. Cochran and Dr. GRL. Both of these physicians indicated during the period of time that we're talking about, Ms. Walsh would have certain limitations including avoid all public contact and only occasional interaction with supervisors. And that's so in the first decision this judge wrote, she found those limitations credible. She found the report fully supported. And she assessed restrictions that included limited work with supervisors. Then we end up on remand. And I have a hearing before the same ALJ and the vocational consultant testifies. And I say to the vocational consultant, let's assume that Ms. Walsh cannot do tandem work with co-workers and supervisors. As those two doctors had stated. The vocational consultant came back and said there'd be no work. And that's at page 721 of the transcript. Now in this new decision, there's not a single restriction relating to Ms. Walsh's ability to deal with supervisors. Why did it go away? Why did she reject the opinion of the own state agency physicians? And the answer is, we read this decision, I have no idea. Not a single piece of evidence was cited to support it. She says those limitations are unsupported. But she doesn't tell us why. And when we talk about a disability claim, especially where we're talking about a three and a half week period of time on a mental impairment. Ms. Walsh was in treatment for years. Being treated for anxiety, she had difficulty affording treatment. She was treated didn't mean that she was disabled. Everyone who was treated is not necessarily disabled. Correct. And that's why we have to look at the evidence. That's why I'm pointing to the opinion of Dr. Fierro, who says that my client would be off task more than 15% of a work day. I'm pointing to Dr. Hawks, who says that my client would be off 15% of a work day. I'm pointing to Dr. March, who's saying that my client would be off task more than 15% of the work day. And I'm pointing to the decision of the Commissioner of Social Security that says, three and a half weeks later, my client would be off task. That was based on additional evidence. But let me ask you about Dr. March. Didn't the ALJ say that the doctor relied on subjective complaints and that there was a check box format. There was no physical diagnoses delineated. And there were no reasons given for the physical limitation that was assessed. Didn't the ALJ say those things? The ALJ said those things without offering citations. And- But the ALJ, prior to saying those things, had gone through the medical evidence and listed everything. And so, are you saying the ALJ had to go back again and repeat everything it had repeated in the preface to making its credibility assessments? The answer to that question is yes. But I want to expand on it. So tell me a case that says, if the ALJ has set out all of the medical evidence and then refers back to it, it must repeat that evidence. What case is that? I believe that it would be in Garrison. Give me your best case for the proposition that the ALJ must repeat its review of the medical records in the process of weighing that evidence. What case says that? So the case law doesn't say repeat. The case law says that the ALJ has to tie the evidence into the finding. And I believe it would be Garrison. Now here- Well, but why wouldn't that be tying the evidence into the finding if the ALJ referenced back to Dr. March's opinion and said why that opinion was not entitled to great weight? Why isn't that relating it back? So first, I'm going to respond by, let's take a look at some of the citations that the judge offers, okay? At 684, you can see that there's a discussion of the records that the judge says support severe mental findings, but not sufficient enough for disability. And these are the- Are you talking about Dr. March's opinion? I'm asking you specifically about Dr. March. So what's your answer to that question? So I can't, specifically to Dr. March, if the argument that the commissioner's making is we have to go back and look what was written earlier, then that's what I'm dealing with. Yes, we look at the entire decision-  To determine whether or not we can ascertain the reasoning of the ALJ. Correct. Okay. And that's what I want to point out. And so, if you look at 684, these are her sites. Exhibit 16F, Exhibit 12F, Exhibit 19F, Exhibit 14F, Exhibit 10F, Exhibit 17F. Where's a page number? Where's a site? This is a 1,000 page record. You can't just say, I deny it based upon the mental health records appearing in these 150 pages. That's not the type of citations that are required. And- So you're saying she couldn't cite to an exhibit? She has to, yes, she has to pinpoint her citations to tell us what evidence supports and detracts. And then she has to provide an analysis resolving conflicts. And she has to explain how those specific conflicts were resolved. That's exactly what she needed to do. But she didn't. And that's why we're here. I see I have two and a half minutes left. So if you don't have any other questions, I'm going to reserve. Thank you, counsel. Thank you.  Good morning, Your Honors. Joseph Langhammer on behalf of the Commissioner. I want to start by addressing the argument that my colleague, Mr. Slepian, made this morning about how we can't reconcile this later decision by ALJ Armbruster on a subsequent application that the claimant filed with the applications that are before this court that ALJ Bucci decided. And Judge Collins, you asked about the fact that there was a different record in front of ALJ Armbruster that he looked at for that subsequent application. And that's absolutely correct. What we see in ALJ Armbruster's decision is him reviewing the fact that the claimant was hospitalized, unfortunately, in March of 2015 for an exacerbation of her symptoms. And following that, ALJ Armbruster also had two additional medical opinions from 2018 that he looked at and assessed in favor of finding disability during that subsequent period. Now, the ALJ decision in front of this court is the one that ALJ Bucci issued, which was a very different record. We have multiple findings throughout her treatment history from 2010 up to February of 2015 that demonstrated that the claimant was functioning relatively well. She was reporting improvement to an extent. The March 2015 incident that required the claimant to check into a treatment facility was this increase in thoughts of self-harm. We don't have that in this record. We have repeated instances of the claimant reporting that she was not feeling suicidal or feeling like she was going to be self-harming. And, in fact, on February 20th, 2015, this was just four days before the close of the relevant period in this particular case, Walsh saw Jenna Luna, who noted that the claimant was a low risk. She reported to Jenna Luna that she was not feeling suicidal and that she would never harm herself. So that's the record this ALJ had before her when she was deciding this case. So the fact that the agency later found the claimant to be disabled on a different record does not relate back to this period. And, in fact, ALJ Armbruster, in his decision, said he was not touching the earlier determination because that was pending in federal court. And I think I would just take a moment to explain to the court kind of how these disability applications work to sort of, you know, explain why did the ALJ find the claimant not disabled on one day and then disabled on the very next day. And the reason for that is just sort of the way these applications are filed. So when the claimant filed the applications before this court, she filed those in 2013 and the ALJ initially found the claimant not disabled. That case came back down on remand from district court. Now, as those district court proceedings were pending, the claimant filed this new application that was ultimately decided in her favor, and she pretty much had to use the February 24th, 2015 date as the alleged onset date because there was already a final decision on the books that found the claimant not disabled. So it was she herself alleged that she became disabled on February 24th, 2015, and that was just pretty much as a consequence of the fact that we had an ALJ decision, a final decision, but that was being litigated in district court. So that sort of explains, I think, why there are two separate periods. So in this case, we do have the ALJ looking at the relevant records and finding the claimant not disabled, and that's a reasonable finding. This morning, Walsh argued that the ALJ improperly rejected the medical opinions of Hawks and Fiero. The claimant has waived that argument. She didn't make that argument in her opening brief or in her reply brief. The district court in the — she made the argument in district court in this case, and the district court rejected that argument. So this court should not consider the claimant's arguments this morning that the ALJ somehow erred in rejecting those two doctors' opinions. The ALJ gave valid reasons for that finding on page 686, and as I mentioned, the district court rejected that argument, and Walsh has not raised that issue on appeal. Can you address the specific issue that counsel raises about the change in the residual function assessment between her first decision and the decision on remand, in that the supervisor limitation disappears? Absolutely. So the first — this first decision, I think it was the — I think it was issued in 2015. This was the February 23, 2015 ALJ decision that was ultimately remanded, and now we have the more current one from 2019, I believe. That first ALJ decision was vacated. It has no binding effect anymore. And — I'm not saying it's binding, but the point is that, you know, you assess the evidence and you find this restriction and you put it into the decision and then it disappears, and the restriction would make a big difference to the outcome. There kind of needs to be an explanation for why it disappeared. Absolutely. And for one, the — you know, the ALJ in this case took additional evidence on remand. There was a new hearing that the ALJ heard additional testimony from the claimant. So, you know, we don't have the exact same records that the ALJ in 2013 had and then — or I'm sorry, 2015 in issuing that decision and then fast-forward to the current decision. There were slight — there were different records that she took additional evidence. And in addition to that, the ALJ did — contrary to the arguments that Walsh made, the ALJ did provide reasons for why — specifically addressed this limitation in the current decision, this limitation to the doctor's, you know, findings that the claimant could have no contact with the public and limited supervisor interaction. Here, the ALJ on page 685 — and again, this is the decision that matters. It's not the vacated one. That one is — and I understand Your Honor's question, but I would focus the Court on the decision that's being appealed. On 685, the AL — it would be one thing if the ALJ just issued, you know, two opinions and didn't talk at all about this change and why there were — you know, why she was changing the RFC. But here she says — and I'm in the middle of page 685 — while their opinions generally supported by the objective and clinical evidence of record, the limitation to avoid all public contact and only occasional interactions with supervisors is not supported. So that means the ALJ is talking about, in that former clause of the sentence, the medical — the objective and clinical evidence. And we see the ALJ, as Judge Rawlinson pointed out, you know, the ALJ did go through a very methodical review of what the objective medical evidence showed. It showed, just on page 684, right before she talks about the doctor's opinions, she's pointing to instances where the claimant is making good eye contact. Okay? That's something that goes towards a claimant's ability to interact socially. Appropriate affect. But I'm looking at this paragraph. I mean, did the limitation in the prior decision, you know, where it says minimal interactions with supervisors on page 30, was that based on the — what was the basis of that in the first ruling? Was it the same state agency opinions? I believe it was. I think the ALJ did mention where Your Honor is referring to those state agency doctors' findings. She did give those state agency doctors weight in that first opinion. But then, looking at the current one, she just seems to reach the opposite conclusion, but she doesn't really say why or even seem aware that it's contrary to what she had said before. And then when she goes on to say something about the new evidence, the only thing that she says is that the new evidence actually cuts the other way in terms of limitations. Additional evidence shows the claimant is more limited than determined by the state agency consultant. So she's not giving a basis or articulating a basis for why she flipped on her evaluation of this item of evidence and, in doing so, took away the limitation that could change the whole result of the case. Alitoson A couple of responses to your question. So I think with respect to where she said that she's finding the claimant more limited than the state agency consultants found, that's specifically with respect to the doctors that looked at the claimant's physical functioning at sort of the bottom of the page there. We see she's — you know, the ALJ is citing these normal — sort of normal exam findings about neck pain. So that — that goes to that point.  But my point is that the only delta she's identifying has nothing to do with this flip. Well, I think in addition to the fact that the ALJ did, again, talk about how the objective and clinical evidence that she just went through supported, you know, not adopting these state agency doctors' findings in full, she also does refer to the criteria in that second sentence. And what that's referring to is earlier in the decision, at Step 3, the ALJ talks about this — this B criteria, which is how you evaluate whether or not a claimant is per se disabled under certain listings that Social Security has issued about various impairments. And when we — when we go back to that, which the ALJ is referring to here, when we go back to that, the ALJ cites even more evidence about the claimant's social limitations. At the bottom of page 681, the ALJ finds that the claimant has moderate limitation in interacting with others, and goes on to cite additional records. She recognizes that the claimant has been withdrawn and suspicious at times, but she's also making good eye contact, and she's indicating fairly good relationships with family members. So what I — I think the point I want to convey, Judge Collins, is if this were a case where we've got two ALJ decisions and there is a sharp change in the RFC with no additional explanation as to why the ALJ is changing course somewhat, that would — that would be a more difficult case. But here, we do have the ALJ explaining why she's not including those additional limitations. And I — and I would — and I would also emphasize the ALJ — Sotomayor, do you think it's this cross-reference to the earlier discussion on 681 of the B criteria? Could you repeat the question? And so you're saying that explanation is provided by her cross-reference to the earlier discussion of the B criteria on page 681? I do. 685 talks about it, references the B criteria, and we can look at — we can see that the ALJ is considering that B criteria again in evaluating the State agency doctor's  And again, I — and what I want to emphasize here on this point as well is that this is not a case also where the ALJ just wholly rejected the fact that the claimant had social limitations. The ALJ included some pretty significant social limitations in the RFC. No working in tandem with coworkers, minimal in-person public interaction, simple judgment. So these are — the ALJ is not rejecting this idea that the claimant is — has absolutely no social limitations. The ALJ is including limitations, just not quite to the extent that the State agency doctors found, and the ALJ provided enough rationale. One of the things that the claimant argued was, you know, that the ALJ pretty much has to repeat verbatim all of the analysis that is in the earlier decision. And, Judge Rawlinson, you asked for a case requiring ALJs to do that. There isn't a case. In fact, the case law from this Court says the exact opposite. I'd refer this Court to Kaufman, which says that when we're looking at ALJ decisions, we're looking at all of the pages. And in Kaufman, for example, what happened in that case was that came up to the Court through a 59E that the district court reversed itself on because, as the Commissioner pointed out, when the — in that case, when the ALJ referenced activities of daily living, the district court originally said, well, we don't know what those activities of daily living are. But the district court reversed itself on that because earlier in the decision, the ALJ actually spelled out what those were. So we're not looking — we're not confined to just one tiny portion of the ALJ's decision. And that rationale applies here, too, because the ALJ did reference lots of medical findings and — including an instance where the claimant said that therapy was actually helping and socializing was helping her. So, again, that sort of cuts against this idea that she has these drastic social limitations. Again, the ALJ accounted for those to the extent that the record supported it. Counsel, what's your position on counsel's assertion that there should be pinpoint sites to these exhibits that were not included? I disagree. It's interesting because the — Walsh has argued today that this, you know, this record includes hundreds of pages. How can we possibly know what the ALJ was referring to when talking to Dr. So we can look at the nine pages, the total of 18 pages that the ALJ cited here and easily see — and the Commissioner, you know, cites these pages in his brief — we can see what the ALJ is talking about here. We don't need pin sites for every citation that the ALJ is citing.  That's what the ALJ refers to. Thank you. All right. Thank you, Counsel. You can see that you're time. Rebuttal? Thank you, Your Honors. So counsel went through and noted that if we have two differing ALJ decisions, we have to look at the analysis. In other words, counsel was trying to provide you with something that we don't have. Judge Armbruster did not provide an analysis as to restrictions and limitations prior to February of 2015. And Judge Bucci didn't reconcile the difference between her opinion and the later opinion. Counsel's trying to say it's different records, it's different this, it's different that, but it's the job of the Commissioner to do it. It's not our job. It's not counsel's job. It's not the court's job. It's missing from the decisions. What's your response to his argument that it's not missing, but it's the cross-reference to the discussion in the context of the B criteria earlier in the decision? Well, first, B criteria has nothing to do with being off task, and it has nothing to do with absences. It's not related to the B criteria at all. The B criteria is analyzed at step three. After step three, the ALJ is supposed to perform a residual functional capacity. I'll point you to the decision of ALJ Armbruster. He found the B criteria were not met, but Walsh was disabled because she was off task more than 15% of her workday and would be absent two days per month. It's irrelevant. He's comparing apples to oranges. Importantly, we argued in our brief that the Commissioner did not reconcile the off-task limitations identified by Dr. Hawks, Dr. Fierro, Dr. Motch, and ALJ Armbruster. That's the argument. That still hasn't happened. Let's talk about those state agency physician opinions. Look, the ALJ found that there were limitations in dealing with co-workers. How can you have no public contact, mental limitations preventing public contact, mental limitations preventing interaction with co-workers, and have unfeathered ability to deal with supervisors? It doesn't make sense. You work with supervisors. They are co-workers. And so she accepts it. She agrees with it. According to counsel, later evidence changes that. Well, where's the analysis? And what is the later evidence? Is it the later evidence in 2015, 2016, 2017? The doctors rendered the opinion during this period of disability. It's consistent with, both doctors are consistent. It's consistent with the three other treating physicians. It's consistent with the reports of Dr. Hill and Luna made shortly, I think it was in March and May of 2015. It's consistent with the opinion of Dr. Armbruster. There's only one person that disagrees. It's the judge. But we don't know why. All she said was B criteria. All right, counsel. We understand your argument. Thank you. You've exceeded your time. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, COLLINS, Fitzwater